```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                       AT CHARLESTON
```

HAROLD DEWHURST and DAVID BRYAN,
on behalf of themselves
and all other persons
similarly situated, and
UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,

    Plaintiffs

v.                                    Civil Action No. 2:09-1546

CENTURY ALUMINUM COMPANY,
CENTURY ALUMINUM OF
WEST VIRGINIA, INC.,
CENTURY ALUMINUM MASTER WELFARE BENEFIT PLAN,
DOES 1 THROUGH 20,

    Defendants


## MEMORANDUM OPINION AND ORDER

       Pending are the plaintiff retirees' motion to lift the stay and to reset certain deadlines, filed September 13, 2012, and the defendants' motions (1) to dismiss the third amended complaint filed August 9, 2012, which was fully briefed on October 9, 2012, and (2) to lift the stay for the sole purpose of allowing the filing and briefing of the aforementioned motion to dismiss, filed August 9, 2012.

I.

This class action involves the putative obligation of Century Aluminum Company ("CAC"), its wholly-owned subsidiary Century Aluminum of West Virginia, Inc. ("CAWV"), and the Century Aluminum Master Welfare Plan ("Plan"), which the court refers to collectively as "Century", to restore the retirees' healthcare benefits.  On June 24, 2010, the court denied the retirees' request for a preliminary injunction ("June 24, 2010, order").  This memorandum opinion and order assumes the reader's familiarity with the lengthy discussion found in the June 24, 2010, order.

On June 30, 2010, the retirees noticed an appeal of the June 24, 2010, order.  On August 24, 2011, the court of appeals affirmed, with the appellate mandate following on September 13, 2011.  On September 26, 2011, the parties were directed to meet and confer respecting scheduling.

Following the filing of plaintiffs' First and Second Amended Complaints on October 19 and December 29, 2011, respectively, and the entry of a scheduling order on December 29, 2011, the court, on April 23, 2012, granted the parties' joint motion to stay the case pending a ruling on the as-yet unfiled Joint Motion for Final Approval of Class Action

Settlement Agreement. The settlement negotiations anticipated to lead to that document apparently stalled later in the summer, and evaporated entirely in the fall, on dates unknown.

On June 26, 2012, the retirees filed their Third Amended Complaint. Paragraph 3 of the Third Amended Complaint describes the thrust of this action:

> Class Members earned their right to retiree medical benefits through decades of employment. Now retired, Class Members rely on retiree medical benefits for their medical needs. The rights were created through collective bargaining between CAWV (or its predecessors) and the USW, which represented retiree Class Members before they retired. The successive labor agreements contained provisions which established CAWV's obligation to provide retiree medical benefits throughout retirement at no cost. Despite these contract provisions, as well as other promises to provide benefits to Class Members throughout retirement, CAWV eliminated all coverage for some Class Members effective January 1, 2010 and for virtually all remaining Class Members effective January 1, 2011.

(Third Am. Compl. ¶ 3). Based upon these allegations, the retirees seek relief under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

On June 26, 2012, the court set July 6, 2012, as the date for filing of the Joint Motion for Final Approval of Class

3

Action Settlement Agreement.  As noted, the settlement never materialized, leading to the filing of the instant motion to dismiss the Third Amended Complaint on August 9, 2012.  Following extension of certain briefing deadlines by the court at the parties' request, the motion to dismiss ripened on October 9, 2012.

In essence, the motion to dismiss asserts that the June 24, 2012, order and the court of appeals' decision in this matter dooms the Third Amended Complaint as a matter of law.

## II.

### A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon

which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'"  Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

**B.   Analysis**

Century asserts that it is entitled to dismissal inasmuch as the "unambiguous language in the applicable documents combined with the legal standard set forth by the Fourth Circuit demonstrate that the retiree health benefits were not vested" and thus subject to reduction or elimination at any time.  (Defs.' Memo. at 7).  Century offers several reasoned arguments in support, relying upon the June 24, 2010, order and the court of appeals' opinion.  Two considerations in combination, however, practically overcome those assertions.

First, the standard governing the retirees' preliminary injunction request is quite different from that attached to a Rule 12(b)(6) motion.  As noted in <u>Ashcroft</u>, "The plausibility standard [in <u>Twombly</u> governing Rule 12(b)(6) challenges] is not akin to a 'probability requirement . . . .'" of the type used in applying the applicable preliminary injunction standard.  See <u>Ashcroft</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 556 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").

Century concedes as much. (Defs.' Reply at 3 ("To be sure, the procedural standards applicable to a preliminary injunction differ from those that govern a motion to dismiss.")). Additionally, the court of appeals reviewed the matter under an abuse of discretion standard. <u>Dewhurst v. Century Aluminum Co.</u>, 649 F.3d 287, 289 (4th Cir. 2011)("Because the district court did not abuse its discretion in denying the preliminary injunction, we affirm the judgment of the district court.").

Second, these settled procedural standards take on added significance when one considers the several instances in the June 24, 2010, order, and the court of appeals' opinion, suggesting that further inquiry beyond the applicable collective bargaining and related instruments might be necessary. One example follows:

> Finally, plaintiffs rely upon the extrinsic evidence summarized supra. <u>Some of that evidence might possibly have significance at a later point in the case</u>. If an as-yet unapparent ambiguity arises on the subject of vesting that would warrant consideration of matters extrinsic, the controversy surrounding the 2007 Master Plan SPD might bear on the question of whether there was an intent to vest.

<u>Dewhurst</u>, 731 F. Supp.2d at 520 (emphasis added); <u>see also</u>, <u>e.g.</u>, <u>id.</u> ("The payment to former retirees of healthcare benefits after expiration of the 1988 CBA on October 31, 1990, and continuing during the 1990-92 Lockout from October 1990 to

7

1992 when the 1992 CBA became effective <u>might have significance as well</u>.") (emphasis added); <u>id.</u> (stating, "[T]he Century Q & A document . . . received by Mr. Walters in April 2006 and Mr. Cochran sometime in 2003, wherein it is stated that a retiree's surviving spouse is entitled to lifetime healthcare benefits, appears to be similar to extrinsic evidence identified by the decision in <u>Keffer</u> as supporting the vesting determination reached in that case. The court will, however, not reach the parties' extrinsic evidence if it <u>ultimately</u> concludes that the governing documents are unambiguous.") (citations omitted) (emphasis added); <u>id.</u> ("In sum, for each contention offered by plaintiffs, <u>an equally</u> or more compelling response is, <u>in the main</u>, presented by Century.")(emphasis added). Similar reservations appear in the court of appeals' opinion, including the following:

> The Retirees also contend they are likely to succeed on the merits because, in their view, the language of the relevant CBAs infers an intent for retiree healthcare benefits to extend beyond expiration of the relevant CBA, despite the durational language which limits benefits to the length of the agreement. For instance, the Retirees argue (among other things) the fact that Century did not specifically reserve the right to eliminate or alter benefits suggests that the bargainers did not intend to delegate to Century such a right. As noted by the district court, however, "[i]t might just as easily be explained ... that Century deemed a reservation of rights as to healthcare benefits unnecessary inasmuch as it deemed the subject to arise anew during each bargaining cycle." <u>Dewhurst</u>, 731 F.Supp.2d at 518 n. 19. <u>As with</u>

8

> **each of the Retirees' contentions, even if the absence
> of a reservation of rights provision were to inject
> ambiguity into the relevant CBAs, that ambiguity alone
> could not satisfy the Retirees' burden under Winter to
> make a "clear showing,"** 129 S.Ct. at 376, **that they
> are "likely to succeed on the merits."** Id. at 374.

Dewhurst, 649 F.3d at 292-93 (emphasis added); see also id. at 293 (agreeing with the undersigned's conclusion that '"for each contention offered by [the Retirees], an equally or more compelling response is, in the main, presented by Century.'")(citation omitted).

　　　An additional consideration is noteworthy.  The court may, as Century urges, ultimately enter a judgment adverse to the retirees based upon the clarity of the durational language found in the various collective bargaining agreements.  The prudent course in that event, however, and one which would provide the court of appeals the benefit of this court's further analysis, would be to assess in the alternative the extrinsic evidence currently in the record, along with that which would be developed in discovery.

　　　The district court and the court of appeals in Keffer undertook that precise effort.  See Keffer, 872 F.2d at 64 ("As the district court recognized, then, both the language in the parties' agreements and the conduct of Connors' representatives indicate that the benefits at issue here were intended to

9

continue beyond the expiration of the collective bargaining agreement.")(emphasis added); Dewhurst, 649 F.3d at 291 ("After finding [in Keffer that] the language of the controlling documents created benefits that survived the expiration of the CBA, we then noted that extrinsic evidence also supported that conclusion.")(emphasis added).

This more thorough and searching inquiry and analysis seems appropriate in light of the nature of the inquiry. See Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 62 (4th Cir. 1989) (stating that "'[i]n order to interpret ... [a collective bargaining agreement] it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.'") (emphasis added) (quoting Transportation-Communication Employees Union v. Union Pacific R.R. Co., 385 U.S. 157, 161 (1966)).

In sum, it is one thing to conclude, as this court and the court of appeals have done, that the retirees lack a clear likelihood of success on the merits. It is quite another, based upon the foregoing discussion, to conclude that they have not stated a plausible claim. They have.

Consequently, the better approach is to allow completion of the evidentiary record, after which the case can

be fully and finally adjudicated. It is, accordingly, ORDERED that the motion to dismiss be, and it hereby is, denied, with Century given leave to renew its contentions at the summary judgment stage of the case.

C. Remaining Motions

Inasmuch as the court has denied the motion to dismiss, it is ORDERED that the parties be, and they hereby are, directed to meet and confer and file, no later than January 4, 2013, a joint report addressing a proposed discovery deadline and timing of other case events. The court, accordingly, ORDERS that the respective motions to lift stay be, and they hereby are, denied as moot.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: December 19, 2012

John T. Copenhaver, Jr.
United States District Judge