```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                     AT CHARLESTON


HAROLD DEWHURST and DAVID BRYAN,
on behalf of themselves
and all other persons
similarly situated, and
UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,

      Plaintiffs

v.                                Civil Action No. 2:09-1546

CENTURY ALUMINUM COMPANY,
CENTURY ALUMINUM OF
WEST VIRGINIA, INC.,
CENTURY ALUMINUM MASTER WELFARE BENEFIT PLAN,
DOES 1 THROUGH 20,

      Defendants
```

## MEMORANDUM OPINION AND ORDER

Pending is the motion filed October 7, 2013, by defendants' Century Aluminum Company, Century Aluminum Master Welfare Benefit Plan, and Century Aluminum of West Virginia, Inc., for an award of sanctions for plaintiffs' spoliation of relevant evidence ("motion for sanctions"). Having received the reply brief on November 20, 2013, the matter is ripe for disposition.

I.

A.   Introduction

This class action involves Century's putative obligation to restore certain retiree healthcare benefits.

B.   Procedural History

On October 19, 2009, Century announced that it intended to modify or terminate retiree health benefits for certain former employees of its Ravenswood, West Virginia, plant on January 1, 2010.  On November 2, 2009, Century instituted an action in this district ("Century action").  It named the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") and Local 5668.  It sought a declaratory judgment that its decision to modify or terminate benefits did not violate either the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, <u>et</u> <u>seq.</u> or the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185, <u>et</u> <u>seq.</u> ("LMRA").

On November 13, 2009, the plaintiffs in this action, the USW, David Bryan, and Harold Dewhurst, on behalf of

2

approximately 437 retires, their eligible spouses, and dependents ("plaintiffs"), instituted suit in the Southern District of Ohio ("USW action").  They alleged that Century's decision to modify or terminate benefits violated ERISA and the LMRA.  The lawyers who represented the USW in both actions also represented Local 5668 in the Century action.

On December 16, 2009, plaintiffs moved for a preliminary injunction in the USW action.  They sought to enjoin Century's modification of retiree benefits.  They relied, in part, on a sworn declaration by Elijah Morris, a Local 5668 official.  Mr. Morris recounted his recollection of what transpired during collective bargaining negotiations at the Ravenswood facility in 1994, 1999, and 2006.  He quoted from alleged notes he took during those bargaining sessions.  He also noted other pieces of extrinsic evidence, including alleged email exchanges between Local 5668 and Century.

On December 23, 2009, the USW action was transferred to the undersigned and consolidated with the Century action.  In their January 29, 2010, reply respecting their preliminary injunction motion, plaintiffs again relied in part on a supplementary declaration by Mr. Morris.  Mr. Morris disputed the relevance of certain evidence cited by Century, noting that he had "searched [Local 5668's] files" for certain documents.

3

Inasmuch as the factual and legal issues in both actions were essentially identical, on June 24, 2010, the court dismissed the Century action for "efficiency and simplicity of proceeding with one instead of two civil actions," and held entry of judgment in the Century action in abeyance, pending the final adjudication of the USW action. On that same date, Local 5668 ceased to be a party.

On June 24, 2010, the court denied the retirees' request for a preliminary injunction. On June 30, 2010, the retirees noticed an appeal of the June 24, 2010, order. On August 24, 2011, the court of appeals affirmed, with the appellate mandate following on September 13, 2011.

Following the filing of plaintiffs' First and Second Amended Complaints on October 19 and December 29, 2011, respectively, and the entry of a scheduling order on December 29, 2011, the court, on April 23, 2012, granted the parties' joint motion to stay the case pending a ruling on the as-then-yet unfiled Joint Motion for Final Approval of Class Action Settlement Agreement. The settlement negotiations anticipated to lead to that document apparently stalled later in the summer, and evaporated entirely in the fall, on dates unknown. Throughout those negotiations, Century apparently insisted that Local 5668, by then a non-party, assent to the settlement terms.

On June 26, 2012, the retirees filed their Third Amended Complaint.  On December 19, 2012, the court denied Century's motion to dismiss the Third Amended Complaint.  The court set a September 6, 2013, discovery deadline, which was subsequently extended to October 4, 2013.  During the discovery period, certain document retention matters arose relating to Local 5668.  Those matters are discussed more fully below.

C.   Document Retention Issues Relating to Local 5668

Shortly after the Century Action was filed, counsel for the USW and Local 5668 asked Mr. Morris to gather helpful evidence that might be found in Local 5668's records.  Those efforts had borne some fruit already, in light of the aforementioned assistance that Mr. Morris offered by declaration during the preliminary injunction proceedings.

Plaintiffs are additionally expected to rely upon, at the dispositive motions stage of the case and perhaps at trial, certain disclosed documents and deposition testimony from Local 5668, Mr. Morris, and other Local 5668 officers.  Century, however, now asserts that neither plaintiffs nor their counsel took steps to preserve relevant documents in the possession of

5

Local 5668 or Mr. Morris at any time after the Century action was instituted.

For example, Jason Miller, President of Local 5668, testified that, prior to receiving a subpoena from Century on June 21, 2013, there were no steps taken to preserve conventional or electronically stored documents at Local 5668 at any time after the Century action was filed.

On September 9, 2013, Century learned additional information during Mr. Morris' deposition.  They assert Mr. Morris claimed that he could not recall whether counsel for the plaintiffs issued him a document preservation directive at the outset of the Century action.  They learned as well that relevant Local 5668 documents had been inadvertently destroyed.

For example, Mr. Morris testified that, at some point after filing of the two actions, all of the electronic mail that he had sent from his official union electronic mail account on his union-provided computer was lost, including correspondence with USW counsel.  Mr. Morris additionally testified that other Local 5668 officials took notes during the relevant bargaining sessions but that a search was not done to locate those documents until 2013.  No one was able to locate those bargaining notes.  Century asserts that there is a strong

likelihood that those notes were lost after the litigation commenced, along with other bargaining documents given "the paucity of other bargaining documents produced by the Local in response to Defendants' subpoena for relevant documents . . . ." (Defs.' Mem. in Supp. at 9).

Century accuses plaintiffs of "gross negligence" for failing to preserve the aforementioned items. (Defs.' Mem. in Supp. at 2). Century moves the court to preclude plaintiffs from using during dispositive motions briefing or trial any of the following: (1) documentary evidence and accompanying testimony provided by Local 5668 or any of its officers, and (2) documentary evidence or testimony provided by the USW regarding collective bargaining negotiations or related meetings between it, Local 5668, and Century. Century additionally seeks an award of attorney fees expended to pursue this matter.

II.

A. Governing Standard and Analysis

Our court of appeals recently encapsulated the familiar standard governing spoliation claims in <u>Turner v. United States</u>, 736 F.3d 274 (4th Cir. 2013):

7

> A party seeking sanctions based on the spoliation of evidence must establish, <u>inter alia</u>, that the alleged spoliator had a duty to preserve material evidence. This duty arises "not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence. Moreover, spoliation does not result merely from the "negligent loss or destruction of evidence." Rather, the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction. Although the conduct must be intentional, the party seeking sanctions need not prove bad faith.

<u>Id.</u> at 282.

Century asserts that plaintiffs were grossly negligent in not securing the documentary and electronic evidence set out above. It asserts as follows:

> As noted above, Morris has been gathering evidence under the direction of Plaintiffs' counsel since the inception of the suit, and has filed two sworn declarations in support of Plaintiffs' PI Motion relying upon and quoting select documents in his or the Local's possession. Despite the Local and Morris playing an integral role in Plaintiffs' case since the earliest stages of this litigation, Plaintiffs took no discernible steps to preserve evidence in the Local's or Morris' possession as to the instant case, all the while relying on materials provided by the Local and Morris in support of their claims. In short, Plaintiffs showed an utter disregard for its document preservation obligations.

(Defs.' Mem. in Supp. at 12). The plaintiffs seem to admit they lacked the most basic of record retention policies. They

8

emphasize, however, the severity of the sanction sought by Century with reference to the actual parties in the case:

> Defendants seek to preclude Plaintiffs from offering any evidence from Local 5668, its officers, or Morris regarding any fact in this case and any evidence from USW regarding 40 years of collective bargaining, or meetings between USW, Local 5668 and CAWV. Preclusion of this evidence would assure that only Defendants' evidence regarding 40 years of negotiations and bargaining history would be considered by this Court in determining whether the medical benefits of the Plaintiff Retirees and the certified class are vested.

(Pls.' Resp. at 1-2). They also note circumstances in mitigation. First, Local 5668 is a small labor association. It lacked studied document retention policies in 2009 and suffered staffing setbacks when Century closed its facility in February 2009. The only fulltime positions on that date were President, Grievance Chair, and an office secretary. The computer system and email products are outmoded. Local 5668 treated the notes taken by its officials during bargaining sessions as the officials' notes and did not require that they be provided to or copied for Local 5668.

Second, Local 5668 appears to have been diligent in trying to gather up relevant documents once litigation commenced. For example, Mr. Miller helped search Local 5668's files in response to Century's 2013 subpoena. He testified that (1) there are multiple file locations at the union hall, (2) Local 5668 has accumulated many documents related to collective

bargaining with Century back to the early 1970s, (3) as of June 2013, the bargaining materials included approximately 12 feet of binders and other materials standing up vertically on two bookshelves on one side of the copier room and approximately 4 medium-sized boxes stacked on top of file cabinets on the other side of the copier room, all of which were searched for responsive documents which were then produced.  Counsel for the plaintiffs assisted in this effort.

Third, there appears to be no way for anyone to determine whether documents that cannot now be found were lost in the years prior to or following 2009.  For example, Kevin Gaul, who became the Grievance Chair on May 1, 2012, discovered in June 2013 that there were no emails in the "sent" box of the Grievance Chair's email account from earlier than January 18, 2012.  Fourth, while there were tens of thousands of pages of bargaining materials personally reviewed by counsel, plaintiffs assert that only a fraction were responsive to the documents request.

The court has considered these mitigating factors among others, along with the concerns expressed by Century.  It is noteworthy that none of the existing plaintiffs shoulder any blame for the negligence of Local 5668.  Additionally, Local 5668 is an autonomous organization.  It elects its own officers

and sets its own policies. While it was a party to this case at one time, it is no longer so and was never a party plaintiff. Additionally, as noted, no one apparently knows when the subject records were destroyed. That fact alone presents a considerable hurdle for Century to overcome as it advocates some of the harshest of sanctions available to the court.

Based upon the foregoing discussion, the court ORDERS that the motion for sanctions be, and hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: February 12, 2014

John T. Copenhaver, Jr.
United States District Judge